UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| WALLACE F. COOK, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:17-cv-00014-NT |
| | ) | |
| NANCY A. BERRYHILL, ACTING | ) | |
| COMMISSIONER, SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDED DECISION

On Plaintiff Wallace Cook's application for disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act, Defendant, the Social Security Administration Acting Commissioner, found that Plaintiff has certain medically determinable impairments, but does not have a severe impairment or combination of impairments. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action for judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court affirm the administrative decision.

### The Administrative Findings

The Commissioner's final decision is the October 26, 2015, decision of the Administrative Law Judge (ALJ). (ECF No. 9-2.)[1] The ALJ's decision tracks the familiar

---

[1] Because the Appeals Council found no reason to review that decision, the Acting Commissioner's final

five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. §§ 404.1520, 416.920.

The ALJ determined that Plaintiff is not disabled at step 2. While the ALJ recognized medically determinable impairments consisting of status post pituitary tumor, loss of visual acuity, and degenerative disk disease, the ALJ found that the impairments are not "severe" for purposes of the disability standard applicable at step 2. (ALJ Decision ¶¶ 3 – 4, R. 16.)

## Standard of Review

A court must affirm the administrative decision provided the ALJ applied the correct legal standards and provided the decision is supported by substantial evidence. This is so even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## Discussion

Plaintiff argues that the ALJ erred when he concluded Plaintiff's impairments were

---

decision is the ALJ's decision. (Notice of Appeals Council Action, ECF No. 9-2, R. 1.)

not severe because although the ALJ relied on opinions expressed by Disability Determination Services consulting physicians in September 2013 (Trumbull, Ex. 1A) and April 2014 (Lipski, Ex. 5A), after the opinions were issued and before the hearing date, there were some significant new medical findings. (Statement of Errors at 1 – 2.) In particular, Plaintiff contends that new findings of venous insufficiency (Ex. 16F) and polyneuropathy (Ex. 17F), and more recent studies of his degenerative disk disease (Ex. 19F) required additional expert assessment. (Statement of Errors at 3 – 6.) Plaintiff maintains the ALJ's error is particularly problematic because a person of his age (61 as of the October 26, 2015, hearing) and educational background (grade 11), whose skills (self-employed auto mechanic) do not transfer to other work, is deemed disabled if his residual functional capacity for substantial gainful activity is limited to light or sedentary work. (*Id.* at 7.)

At step 2, although a social security disability claimant must establish that he or she suffers from a severe condition, the burden is *de minimis*, designed merely to screen out groundless claims. *McDonald v. Sec'y of HHS*, 795 F.2d 1118, 1123 (1st Cir. 1986). The ALJ may find that an impairment or combination of impairments is not severe only when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* at 1124 (quoting Social Security Ruling 85–28). In other words, an impairment is severe if it has more than a minimal impact on the claimant's ability to perform basic work activities on a regular and continuing basis. *Id.* According to

3

Defendant's regulations, such activities could include walking or standing for as many as six hours, while carrying heavy objects, over the course of an eight-hour day, forty hours per week. 20 C.F.R. §§ 404.1522(a), 404.1545(b); Social Security Ruling 96–8p ("A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."). This Court has observed:

> There is no hard and fast rule requiring renewed evaluation by a consulting expert every time a disability claimant experiences new medical events or obtains new diagnoses in the interval between the initial DDS consultant's RFC assessment and the date of the administrative hearing. Particularly where pain is concerned, an Administrative Law Judge has the unenviable duty to make a credibility determination, 20 C.F.R. §§ 404.1529(a), (c)(1), (c)(4), 416.929(a), (c)(1), (c)(4); SSR 96–7p, and the evidence contained in new medical records may, in some cases, simply dovetail with the credibility determination. Where the dividing line exists is difficult to determine and will depend on the particular facts of a case.

*Bachelder v. SSA Comm'r*, No. 1:09-CV-436-JAW, 2010 WL 2942689, at *6 (July 19, 2010), *report and recommendation adopted*, 2010 WL 3155151 (D. Me. Aug. 9, 2010). *See also Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir. 1994) ("[T]he amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert. In some cases, written reports submitted by non-testifying, non-examining physicians cannot alone constitute substantial evidence, although this is not an ironclad rule." (citations and internal quotation marks omitted)).

In this case, Donald Trumbull, M.D., and Marcia Lipski, M.D., determined that Plaintiff's impairments are not severe. In forming their opinions, they considered medical evidence related to Plaintiff's tumor removal/visual acuity, degenerative disk disease, and

4

headaches. (Ex. 1A, R. 70; Ex. 5A, R. 87.) Dr. Lipski also considered a lumbar x-ray report of "mild" degenerative changes, dated April 16, 2014. (R. 88.) Both consultants reviewed the September 2013 examination findings of David Axelman, M.D. (Ex. 6F), who assessed severe limitations impacting Plaintiff's ability to engage in prolonged sitting or standing, bending, and bearing weight, but they found Dr. Axelman's assessment to be unpersuasive.

Following the assessments by Drs. Lipski and Trumbull, Plaintiff obtained an evaluation of bilateral foot pain and numbness. In a report dated August 26, 2014, Mona Li, M.D., found deep venous insufficiency bilaterally and "great saphenous vein venous insufficiency" on the left. (Ex. 16F, R. 447.) Dr. Li's plan included "conservative measures such as rest, elevation, compression stockings, maintenance of weight, exercise, and avoidance of prolonged standing and sitting." (*Id.*) An EMG study was ordered to explore the possible connection between dysesthesias over the plantar surfaces of both feet and lumbar degenerative disk disease. (Ex. 17F, R. 454.) On October 1, 2014, Peter Arabadjis, M.D., reported an abnormal study, which noted that Plaintiff is experiencing sensorimotor demyelinating and axonal polyneuropathy, most likely due to toxic or metabolic etiology, with no electrodiagnostic evidence of left lumbosacral plexopathy or radiculopathy. (R. 455.)

Upon review of an MRI study of Plaintiff's lumbar spine conducted on December 17, 2014, Mark Piccirillo, M.D., reported that "[m]oderate relative narrowing of the L5-S1 disc is seen in association with erosive endplate bony changes and adjacent reactive marrow signal abnormalities," and provided his impression that Plaintiff suffered from

5

"[m]oderately advanced disc and endplate degenerative changes at L5-S1," but "[n]o signs of significant neural encroachment." (R. 502 – 503.)

According to the ALJ, the medical records generated after the assessments performed by Drs. Lipski and Trumbull "do not reflect any significant findings that would support a different decision" than the one endorsed by Dr. Lipski. (R. 18.) In support of his determination, the ALJ cited chiropractic records from May 2014, in which Plaintiff reported that one month of treatments had improved his lower back pain by 90 percent (Ex. 21F, R. 564); a provider progress note from December 2014, which note reflected that Plaintiff is on his knees "a lot" due to his work (Ex. 20F, R. 531); a report of 0 pain in a treatment note associated with Plaintiff's presentation for care of pneumonia symptoms (Ex. 20F, R. 538); and Plaintiff's testimony that lower extremity neuropathy is pronounced at night, but not at work; that he had not thrown out his back in two years and has not returned to the chiropractor; that he is not undergoing active medical treatment for these conditions; and that his strength is not diminished. Defendant contends the ALJ's findings are supported by substantial evidence because none of the diagnostic studies provide reliable evidence of any degree of functional impairment. (Response at 9 – 11, ECF No. 16.)

Plaintiff must demonstrate that the impairments are severe, and must provide medical evidence regarding the limiting effects of the impairments on which the step 2 challenge is based. *LaBonte v. Astrue*, No. 2:09-cv-00058-GZS, 2010 WL 2024895, at *2 (D. Me. May 18, 2010). Failure to do so not only undermines a step 2 challenge, but renders harmless any supposed error. *Beaulieu v. Colvin*, No. 1:14-CV-00335-DBH, 2015

6

WL 4276242, at *2 & n.5 (D. Me. July 14, 2015). In other words, even if Plaintiff establishes that the ALJ erred at step 2, remand is only appropriate if Plaintiff also demonstrates that had the ALJ not erred, the result would have been different. *Bolduc v. Astrue*, No. 09-220-B-W, 2010 WL 276280, at * 4 n.3 (D. Me. Jan. 19, 2010).

Plaintiff relies in part on the findings and assessment of Dr. Axelman (Ex. 6F).[2] Dr. Axelman opined that Plaintiff has difficulty with sitting for 30 minutes, standing and walking. Additionally, Dr. Axelman found that Plaintiff has difficulty bending and "lifting very small amounts of weight." (R. 335.) Dr. Axelman's medical opinion is consistent with a residual functional capacity for a subset of light work or sedentary work. Dr. Lipski, however, reviewed Dr. Axelman's assessment, noted that the assessment "relies heavily on the subjective report of symptom and limitations provided" by Plaintiff, and concluded that Dr. Axelman's assessment did not support a finding that Plaintiff suffered from a severe physical limitation. (Ex. 5A., R. 90.) Consistent with Dr. Lipski's opinion, the ALJ gave "little weight" to Dr. Axelman's opinion, and found that "Dr. Axelman seemed to have simply reiterated the claimant's subjective complaints and the limitations described by the claimant were not supported by the findings on examination." (R. 20.) Under the circumstances, Dr. Lipski's conclusion constitutes substantial evidence to support the ALJ's determination that despite Dr. Axelman's assessment, Plaintiff did not suffer from a severe impairment. The issue, therefore, is whether the subsequent reports related to

---

[2] Plaintiff also cited the treatment records of Richard Bruns, D.C. (Ex. 21F.) Although Dr. Bruns assessed a 21% disability, he also reported significant improvement with treatment. (*Id*.) The ALJ's finding that Dr. Bruns's records were not probative of a severe functional limitation (R. 20) was not error.

venous insufficiency, polyneuropathy, and progressive disc disease required the ALJ to find a severe impairment regardless of Dr. Lipski's assessment.

The MRI report regarding Plaintiff's lumbar spine degenerative disk disease does not provide evidence of limiting effects. In fact, Dr. Piccirillo's impression could be regarded as supportive of the ALJ's finding insofar as Dr. Piccirillo indicated there were "no signs of significant neural encroachment." (Ex. 19F, R. 503.) Furthermore, while the EMG study of Plaintiff's lower extremities was "abnormal," Dr. Arabadjis found no evidence that the lower extremity symptoms were in any way connected to Plaintiff's lumbosacral condition. (Ex. 17F, R. 455.) As to Plaintiff's lower extremities, the EMG report does not contain an opinion regarding the limiting effects of the findings. Finally, in the report prepared following her vascular consultation (Ex. 16F), Dr. Li characterized varicosities as "essentially asymptomatic" (R. 447), denied the presence of symptoms consistent with venous insufficiency (*Id.*), and stated that, overall, Plaintiff "is relatively asymptomatic." (R. 448.) Given the assessment and given Dr. Li's conservative recommendations regarding treatment, the mere fact that she advised against "prolonged standing and sitting" (R. 447) would not require a different conclusion by or a reassessment by the ALJ.

In addition, the ALJ reviewed the treatment records generated after Dr. Lipski's assessment and reasonably determined that the records did not support an alternative finding. The ALJ noted, among other evidence, the absence of "any significant findings" subsequent to Dr. Lipski's review, that findings in the medical record do not reflect a loss of strength on muscle testing, the significant improvement of Plaintiff's symptoms as the

result of a course of chiropractic treatment, and the lack of ongoing active treatment, in support of his conclusion that Plaintiff did not suffer from a severe impairment. (R. 18 – 20.) The ALJ's assessment of the medical evidence was reasonable.

In short, the ALJ's step 2 determination is supported by substantial evidence on the record. Plaintiff, therefore, cannot prevail on his claim of error.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court affirm the administrative decision.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 7th day of November, 2017